UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALBERT JOHNNY TORRES,      )
     Petitioner          )
                    )
                    )      CIVIL ACTION
     v.                  )      NO. 05-40018-NMG
                    )
UNITED STATES OF AMERICA,   )
     Respondent          )
                    )

## Government's Memorandum In Opposition To
## Petitioner's Motion Under 28 U.S.C. §2255

### INTRODUCTION

The United States of America, by Michael J. Sullivan, United States Attorney, and David Hennessy, Assistant U.S. Attorney, for the District of Massachusetts, hereby files this memorandum in opposition to the petitioner's motion under 28 U.S.C. §2255. Albert Johnny Torres ("Torres") has filed a petition seeking to vacate or set aside the sentence that this Court imposed on the following grounds: (1) that his sentence was unconstitutionally enhanced based on findings of fact that were not proved to a jury beyond a reasonable doubt; and (2) that his attorney was constitutionally ineffective. Because Torres's claims are procedurally barred or meritless, the petition should be dismissed.

### FACTS AND PRIOR PROCEEDINGS

Torres was charged in an indictment, with eleven others, with one count of conspiring to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §846; eight counts of distributing cocaine base, in violation of 21 U.S.C. §841(a)(1);

and one count of possession and use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §924(c). [D.120].[1]  On September 30, 2002, Torres pleaded guilty to each of the charges against him. [D.331]. On January 10, 2003, the district court sentenced Torres to 228 months of imprisonment (168 months on Counts 1 through 8 and 11, to be served concurrently, and 60 months on Count 9, to be served consecutively to the sentence imposed on the other counts). The district court also imposed five years of supervised release and a $1,000 special assessment. [D.344].

The evidence established that Torres and his drug organization sold crack cocaine to a U.S. Drug Enforcement Agency ("DEA") agent working undercover (the "UC") numerous times between August 10, 1999, and October 28, 1999. [Plea Hg. 8-13].   Torres's drug organization included co-conspirators Dilson Ventura, Javier Rivera, Maresala Segura [id. at 9], Junior Santana, two neighbors [id. at 10], Collazo, Alex, Richard Ruiz [id. at 11], and Jesus Torivio Arias [id. at 13].   During the course of several transactions, Torres directed his co-conspirators' actions [id. at

---

[1]Citations are as follows: "[D._]" refers to a docket entry, "[Def. Brf.]" refers to the defendant's brief dated January 25, 2005.  The government annexes hereto, for the convenience of the Court, the transcript of the change of plea hearing ("[Plea Hg.]") and the transcript of the sentencing hearing ("[Sn. Hg.]").  The government also annexes the First Circuit Court of Appeals' decision in the matter of United States v. Albert Johnny Torres, 03-1197 (Exhibit B).

2

9]; arranged for a co-conspirator to obtain a gun for sale to the UC [id. at 10]; recruited co-conspirators [id. 10; Sn. Hg. 9]; directed workers to conduct sales for him [Plea Hg. 11; Sn. Hg. 9]; and fired co-conspirators [Sn. Hg. at 9]. Between August 1999 and October 1999, Torres and his drug organization sold over 360 grams of crack cocaine to the UC. [Sn. Hg. 13]. During the course of the drug negotiations and drug sales, Torres also sold the UC a gun. [Plea Hg. 12].

On September 30, 2002, Torres pleaded guilty without a plea agreement to the indictment. [D.331]. At the plea hearing, the district court asked Torres if he had received the indictment and had "fully discussed those charges and the case in general with" his lawyer. [Plea Hg. 4]. Torres stated that he had, and that he was satisfied with his attorney's counsel, representation, and advice. [Id.]. The Court inquired about the voluntariness of the plea: it established that Torres had a ninth-grade education, was not under the influence of drugs or alcohol, and had not been promised anything in exchange for the plea. [Id. at 3-5]. At the Court's request, the government stated the maximum and minimum penalties for Torres's crimes, including the mandatory consecutive five-year sentence for Count 9, the gun charge. [Id. at 5-6]. Torres stated that he understood the possible consequences of his plea. [Id. at 6]. After carefully informing Torres of his rights [id. at 5, 7-8], the government read a detailed factual basis for

3

the indictment [id. at 8-13], to which Torres admitted. [Id. at
14].   The Court accepted Torres's guilty plea, finding that "the
defendant is fully competent and capable of entering an informed
plea and that his plea of guilty is a knowing and voluntary plea,
supported by an independent basis in fact, containing each of the
essential elements of the offense charged." [Id. at 15].

On January 10, 2003, the district court held a sentencing
hearing. [D.344].    In a written memorandum, Counsel for the
defendant objected to the Presentence Report, as follows: 1) to the
amount of drugs attributed to the defendant; 2) to the defendant's
leadership role in the conspiracy; and 3) claiming that the
government engaged in sentencing manipulation by purchasing the
firearm.   [Sn. Hg. 3-4].    The Court overruled the objection
regarding the allegation of sentencing factor manipulation. [Id. at
4-5].   Regarding leadership role, Torres's attorney argued that
Torres was not a leader or supervisor, but was at most "like an
independent contractor." [Id. at 6-7].    After hearing extensive
arguments from both sides, the Court found that "the defendant was
an organizer or leader of a criminal activity that involved five or
more participants." [Id. at 13].    In regards to drug weight,
Torres's attorney argued that Torres should only be held
accountable for the 360 grams of crack cocaine involved in the
transactions with the UC, and not an additional 256 grams of crack
cocaine alleged by the government. [Id.].   Despite the fact that

4

the government's estimates were corroborated by the defendant's own statements and the statement of co-conspirators, the Court ruled in favor of the defendant.  [Id. at 22].

Torres's attorney also moved for a downward departure because Torres's background was "far beyond what one would describe as disadvantaged and was horrific." [Id. at 26].  In support of his arguments, Counsel submitted a report completed by Dr. Daigneault regarding Torres's psychological and emotional history and condition.  [Id.].  The government opposed the motion and, after considering arguments from both sides [id. at 26-31], this Court determined that Torres's mental and emotional conditions did not warrant a downward departure. [Id. at 32].

The Court determined that Torres had an adjusted offense level ("AOL") of 35.[2]  Since Torres was in criminal history category ("CHC") I, the Court found that the guidelines sentencing range ("GSR") was 168 to 210 months.  The Court also noted that in addition to the sentence for the other counts, 18 U.S.C. § 924(c), the statute alleged in Count 9, "directs that the term of imprisonment is  .  .  .  a five-year consecutive term of imprisonment." [Id. at 25].  Torres did not object to the Court's

---

[2]Based on a weight of cocaine base between 150 grams and 500 grams, the Court found that Torres had a BOL of 34, pursuant to U.S.S.G. §2D1.1(a)(3), (c)(3); a four-level upward adjustment for his leadership role in the offense, pursuant to §3B1.1(a); and a three-level downward adjustment for acceptance of responsibility, pursuant to §3E1.1(a), (b). [Id. at 24-25].

calculation of his GSR.

Both the government and the defendant recommended that a sentence at the bottom of the guideline range.  [Id. at 32-33]. The Court imposed a concurrent sentence of 168 months of incarceration on Counts 1-8 and 11, plus a consecutive term of 60 months' incarceration on Count 9.  The Court also imposed a supervisory release for a term of five years, plus a special assessment fee of $1,000.  [Id. at 35-36].

On January 31, 2003, the defendant filed an appeal with the First Circuit Court of Appeals.  United States v. Albert Johnny Torres, 03-1197.  Torres appealed his sentence on the basis that 1) the Court failed to properly instruct Torres as to the nature of the charges against him; 2) the Court erred in accepting Torres's guilty plea to Count 9 without an adequate factual basis for the offense charged; 3) his attorney was constitutionally ineffective by failing to properly advise Torres that the evidence did not support a conviction under Count 9; 4) the Court erred in finding that Torres was an organizer or leader of a criminal activity that involved five or more participants.  See Exhibit B.  In its March 12, 2004 decision, the Court of Appeals affirmed the judgment of conviction.  It found that there was a factual basis for the plea to Count 9; that the plea colloquy satisfied the requirements of Rule 11; and, that there was no clear error in the district court's assessment of a four-level aggravating role adjustment.  Lastly,

6

the Court of Appeals declined to address Torres's ineffective assistance of counsel claim, because it was not cognizable on direct appeal. See id. Hence, the First Circuit affirmed Torres's judgment of conviction. Id. Torres did not file a petition for a writ of certiorari.

On January 25, 2005, Torres filed a memorandum of law pursuant to 28 U.S.C. §2255 to vacate or set aside his sentence.

### ARGUMENT

### A.   Booker *is not retroactively applicable to Torres's case, because his judgment became final before* Booker's *decision was announced.*

Torres argues that he should be resentenced pursuant to the Supreme Court's recent decision in Booker, which held that unless the federal Sentencing Guidelines are applied on an advisory basis, they are subject to the Sixth Amendment's requirements of a jury trial. United States v. Booker, 125 S.Ct. 738, 769 (2005). The new rule in Booker made it unconstitutional to apply the Guidelines on a mandatory basis, using facts not proved to a jury. Id. Torres argues that since his sentence was enhanced under the Guidelines based on facts not found by the jury or admitted by the defendant, he should be entitled to collateral relief. See Def. Brf. at 2.

Torres, however, may not seek resentencing based on a Booker error, because Booker is not retroactively applicable to collateral challenges such as his. First, in Booker, the Court stated that it

7

was applying <u>Booker</u>'s holding "to all cases on direct review" as of
the date of the decision, January 12, 2005.  <u>Id.</u>  Torres's case was
not pending direct review on January 12, 2005 - since the First
Circuit affirmed his conviction on March 12, 2004 and Torres did
not file a petition for a writ of certiorari, judgment became final
90 days after entry of the Court of Appeals' judgment, on June 10,
2004.  <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 525 (2003) ("[A]
judgment of conviction becomes final when the time expires for
filing a petition for certiorari contesting the appellate court's
affirmation of the conviction.").    Since <u>Booker</u> is not
retroactively applicable to cases that became final before January
12, 2005, and Torres's judgment became final in June 2004, Torres
cannot seek resentencing under <u>Booker</u>'s new rule.

Second, new constitutional rules of criminal procedure are
generally not retroactively applicable to cases that became final
before the decision was announced.  <u>Teague v. Lane</u>, 489 U.S. 288,
316 (1989) (plurality opinion).  Under <u>Teague</u>, the Supreme Court
allows for only two exceptions to the general bar on retroactive
application: (1) a new substantive rule that alters the range of
conduct or the class of persons that the law punishes; and (2) one
of the rare "watershed rules of criminal procedure implicating the
fundamental fairness and accuracy of the criminal proceeding."
<u>Schriro v. Summerlin</u>, 124 S.Ct. 2519, 2520 (2004) (internal
quotations omitted); <u>Teague</u>, 489 U.S. at 311.   "That a new

8

procedural rule is 'fundamental' in some abstract way is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished." Summerlin, 124 S.Ct. at 2523 (internal quotations, citations omitted). Booker fits neither exception.

In the analogous decision of Summerlin, the Supreme Court held that its decision in Ring v. Arizona, 536 U.S. 584 (2002) constituted a new procedural rule that did not apply retroactively to cases already final on direct review. Summerlin, 124 S.Ct. at 2526. In Ring, the Court had applied the Apprendi rule to a death sentence. Id. at 2522; see Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The Summerlin Court determined that the new rule in Ring was procedural, rather than substantive: "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision making authority in this fashion are prototypical procedural rules." Summerlin, 124 S.Ct. at 2523. Thus, the first Teague exception did not apply to Ring. The Court found that the second Teague exception did not apply because judicial factfinding, while arguably less accurate than a

9

jury, does not "so seriously diminish[] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." Id. at 2525 (internal quotations omitted). Therefore, it was not part of the "extremely narrow" class of watershed rules that would allow for an exception. Id. at 2523. Accordingly, the Supreme Court held that the rule in Ring could not apply retroactively to cases already final on direct review. Id. at 2526.

Similarly, the First Circuit has held that "the Apprendi rule has no retroactive application to cases in which the judgment of conviction became final before Apprendi was decided." Sepulveda v. United States, 330 F.3d 55, 66 (1st Cir. 2003). The court in Sepulveda found that the first Teague exception did not apply to the Apprendi rule because it "neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants." Id. at 59. It found that the Apprendi rule did not fall into the second Teague exception because, as a rule pertaining to sentencing, infringement of its rule could not "seriously diminish the accuracy of convictions (which, by definition, must take place before any such infringement occurs)." Id. at 60. Emphasizing that "[w]atershed rules affecting bedrock procedural elements are few and far between," the Sepulveda court found that "Apprendi is not within this small core of cases." Id. at 61. Therefore, it

10

held, "without serious question, that Apprendi prescribes a new rule of criminal procedure, and that Teague does not permit inferior federal courts to apply the Apprendi rule retroactively to cases on collateral review." Id. at 63.

In Booker, the Supreme Court applied the Apprendi rule to the federal Sentencing Guidelines. Booker, 125 S.Ct. at 747-48. Like Ring, which applied the Apprendi rule to a death sentence, and Apprendi itself, Booker should be considered a new procedural rule that is not retroactively applicable to cases on collateral review. By requiring that the Guidelines be applied on an advisory basis to enhance a defendant's sentence, Booker "altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way]," Summerlin, 124 S.Ct. at 2523. As the Supreme Court stated in Summerlin, "[r]ules that allocate decision making authority in this fashion are prototypically procedural rules." Id.

Furthermore, like sentence enhancements based on judicial factfinding, sentence enhancements based on mandatory Sentencing Guidelines do not seriously diminish the accuracy of convictions. As the First Circuit recently stated, "[t]he guidelines remain a central consideration in sentencing; and sentencing courts must still consider the same statutory factors that the Sentencing Commission was required to use in promulgating the guidelines. To describe the use of mandatory guidelines as generating serious

11

inaccuracy or fundamental unfairness would not be easy." <u>Cirilo-Muñoz</u>, 404 F.3d at 533; <u>see also</u> <u>McReynolds v. United States</u>, 397 F.3d 479, 481 (7th Cir. 2005), <u>cert. denied</u>, 2005 WL 1105026 ("As a practical matter, . . . sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.   That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process.").   Like <u>Ring</u> and <u>Apprendi</u>, <u>Booker</u> is a procedural rule that does not fit into the extremely narrow class of "watershed" rules.

Thus, <u>Booker</u> should not be retroactively applicable to cases already final on direct review.   Indeed, "[e]very other circuit that has considered this issue has agreed that <u>Booker</u> does not apply retroactively."   <u>Cirillo-Muñoz</u>, 404 F.3d at 533; <u>citing</u> <u>Varela v. United States</u>, 400 F.3d 864, 866-68 (11th Cir. 2005); <u>Humphress v. United States</u>, 398 F.3d 855, 860-63 (6th Cir. 2005); <u>McReynolds</u>, 397 F.3d at 480-81; <u>United States v. Mitchell</u>, 122 Fed.Appx. 539, 540 (2d Cir. 2005) (unpublished); <u>United States v. Leonard</u>, 120 Fed.Appx. 759, 761 (10th Cir. 2005) (unpublished). Consistent with Supreme Court and Circuit Court precedent, <u>Booker</u> should not be retroactively applied to Torres's collateral challenge.

## B.   *Torres's objections to his sentence were not preserved, and he has not shown "cause" or "actual prejudice."*

12

Assuming *arguendo* that <u>Booker</u> can be retroactively applied to collateral challenges, Torres's case does not warrant resentencing. Torres failed to raise a Sixth Amendment challenge to the application of the Guidelines to his case, so he may only pursue his <u>Booker</u> claim if he can show both "cause" for his failure to raise the issue at his sentencing hearing and on direct appeal, and "actual prejudice" resulting from the <u>Booker</u> error.  <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  Since Torres's claim does meet these requirements, it cannot give rise to collateral relief.

## 1.    Torres cannot show cause to excuse his double procedural default

Torres argues that his <u>Booker</u> claim "was not presented previously due to the fact that it is based on new constitutional law unavailable until the Supreme Court's ruling entered January 12, 2005."  [Def. Motion 5].   This argument, however, is insufficient to establish "cause" for failing to raise the Sixth Amendment issue at trial or on appeal.   "The inquiry into the applicability of the procedural default rule is, for the most part, black or white: either the defendant proffered a timely objection or he did not.  While there are a few exceptions, the subsequent announcement of a Supreme Court ruling - whether or not it blazes new trails - is not one of them."  <u>Derman v. United States</u>, 298 F.3d 34, 44 (1st Cir.) (internal citation omitted), <u>cert</u> <u>denied</u>, 537 U.S. 1048 (2002).  Unless the claim is "so novel that its legal

13

basis is not reasonably available to counsel," the claim's novelty does not establish cause for the defendant's procedural default. Bousley, 523 U.S. at 622.

When the defendant was sentenced in January 2003, the legal landscape surely provided a basis for Sixth Amendment challenges to the Sentencing Guidelines. The caselaw suggests as much. See e.g., Apprendi, 530 U.S. at 494 ("[T]he relevant inquiry is not one of form, but of effect - does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"); Id. at 544 (O'Connor, J., dissenting) ("The principle [underlying the Court's decision] thus would apply . . . to all determinate sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g., the federal Sentencing Guidelines)); McMillan v. Pennsylvania, 477 U.S. 79, 80 (1986) (addressing an argument that a state mandatory minimum sentencing act violated the jury trial guarantee of the Sixth Amendment).

Moreover, the Court has also held that "the futility of presenting an objection . . . cannot alone constitute cause for a failure to object at trial," Engle v. Isaac, 456 U.S. 107, 130 (1982), so the fact that courts previously rejected challenges to the Sentencing Guidelines under Apprendi does not alone support a finding of cause. Thus, the fact that Torres's sentencing preceded the announcement of the Booker fails to excuse his double

14

procedural default to raise a Sixth Amendment challenge to the Sentencing Guidelines.

## 2. Torres cannot show actual prejudice

Even if Torres could establish that he has adequate cause to excuse his double procedural default, he has not shown that he was actually prejudiced by the alleged Booker error. To establish the "actual prejudice" requirement, a defendant must show that the error "worked to his *actual* and substantial disadvantage." Frady, 456 U.S. at 170. This is a demanding standard; it requires that the defendant carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain-error standard. Id. at 167.

Torres is unable to meet the high burden of the "actual prejudice" requirement because it is unlikely that this Court would have sentenced him differently had the Sentencing Guidelines been advisory. First, Torres's argument that the district court erred in using a preponderance standard, rather than proof beyond a reasonable doubt, to make findings regarding Torres's leadership role, does not establish "actual prejudice." Since Booker did not invalidate judicial fact-finding by a preponderance, the district court's usage of a preponderance standard does not establish that this Court would have imposed a lower sentence under an advisory Guidelines regime. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005) ("The error is not that a judge (by a

15

preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

Second, there is no reason to believe that the district court would have found under an advisory Guidelines regime that Torres should have received a different sentence. There was abundant evidence that Torres was a leader in criminal conduct involving five or more persons. Torres fired co-conspirators Rivera and Segura; hired co-conspirators Collazo and another neighbor; and had co-conspirators Ruiz, Collazo, and Alex LNU conduct a transaction for him. [Sn. Hg. 9]. He also conducted transactions with co-conspirators Ventura, Santana, and Arias. [Plea Hg. 9-10, 13]. As the Court of Appeals noted, the undisputed evidence showed that Torres "coordinated the activities of a number of individuals in the course of several drug transactions, and that he arranged for a co-defendant to obtain a gun for purchase by the undercover officer." See Exhibit B at 2. Similarly, there was no dispute that Torres sold 360 grams of cocaine base to the UC. That quantity warranted a long sentence. Lastly, this Court was required by statute to impose a jail term of five years consecutive to a sentence for drug trafficking based on Torres's possession and use of a firearm during and in relation to a drug trafficking offense. See 18 U.S.C. 924(c).

16

Apart from these factors, Torres's case simply does not present facts that might have moved the district court under an advisory system to impose a lower sentence. Those factors that might have moved the Court to impose a lower sentence, were expressly addressed by this Court. It denied a motion for a downward departure. In addition, this Court expressly recognized that "there is no doubt that this defendant's upbringing and childhood was horrific and no one should have to suffer it," but nevertheless found without hesitation that "it does not excuse the conduct which he voluntarily entered into as an adult." [Sn. Hg. 32]. Indeed, rather than expressing antagonism toward the Guidelines or a desire to impose a lesser sentence, this Court's pronouncements evidence its belief that the sentence it imposed was entirely appropriate:

> I am going to impose the sentence that is called for
> under the laws of this country for someone such as you
> who has spread the poison called crack cocaine amongst
> our population in vast quantities. And the only way that
> we do see to try to impress those . . . who would follow
> your example of distributing crack cocaine is to impose
> very severe punishments on those who are convicted of
> this crime. [Id. at 34-35].

The Court further expressed hope that the long sentence would benefit the defendant: "I hope that in the process of this long incarceration you can bring yourself to understanding what is necessary to be a productive member of this society when you get out and that you will do everything in your power to see that that comes about." [Id. at 35]. Thus, this case stands in direct

17

contrast to <u>United States v. MacKinnon</u>, 401 F.3d 8 (1st Cir. 2005),
where the district court considered a Guideline sentence to be
imposed to be "obscene,"[3] and to any other case where statements by
the court suggest it viewed the sentence to be "unjust, grossly
unfair, or disproportionate to the crime committed."
<u>Antonakopoulos</u>, 399 F.3d at 81. Since there is nothing to indicate
that this Court would have sentenced Torres differently had the
Guidelines been advisory, Torres cannot establish that the <u>Booker</u>
error "worked to his *actual* and substantial disadvantage," and
therefore, his claim for resentencing must fail.

## C. *Torres has failed to establish a claim of ineffective assistance of counsel*

Torres claims that he was denied effective assistance of
counsel (1) when his attorney failed to advise him of the
consequences of pleading guilty to the gun charge; and (2) when his
attorney failed to dispute his four-level enhancement for his
leadership role in the conspiracy. These claims are without merit.

### 1. Legal Principles

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Court,
in reaffirming that the Sixth Amendment guarantees a criminal
defendant "effective" assistance of counsel, said, "[t]he benchmark
for judging any claim of ineffectiveness must be whether counsel's

---

[3] <u>MacKinnon</u>, 401 F.3d at 10 ("It is an obscene sentence that
has to be imposed. It is unwarranted by the conduct...but I have
no choice.").

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Court formulated a two-prong test for evaluating counsel's performance. To establish a violation of the Sixth Amendment, a defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Id. at 687. In considering such a claim "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment." Id. at 690 (emphasis added). While a defendant must prove both prongs, id. at 687, Torres can establish neither.

## 2. Counsel's performance exceeded objective standard

In this case, Counsel's performance met, if not exceeded, an objective standard of reasonableness.    The record shows that Counsel was diligent in protecting Torres's rights, and was fully focused on Torres's potential jail exposure. Among other things, Counsel made written and oral arguments against any fact that enhanced Torres's sentence, and argued vigorously for a downward departure. Counsel even submitted a detailed psychological report completed by Dr. Daigneault in support of Torres's case, ensuring that the record reflected the horrific nature of Torres's background, as well as the extent of his psychological and

19

emotional problems that resulted.   While the Court declined to allow a downward departure, Counsel's diligence in providing this information also built a case for sentencing Torres at the low end of the guideline range.

Furthermore, Counsel successfully argued that Torres should not be held accountable for more than the 360 grams of crack cocaine involved in his transactions with the undercover officer. [Sn. Hg. 22].   Despite the fact that a quantity of at least 500 grams could be corroborated by both co-conspirator Rivera's statements and the defendant's own statements to the UC, see id. at 19-20, the Court found that the additional 140 grams could not be established based on a preponderance of the evidence.   Id. at 22-23.   The Court's reasoning mirrored Counsel's arguments that the statements of co-conspirator Segura cast sufficient doubt over those of Rivera and the defendant himself: "although I am certain that there were other sales from 187 [Summer Street], there is an inconsistency between the proffers of Miss Segura, which the government does attribute, and the other proffers, particularly that of Mr. Rivera, that leave it less than clear as to the amount of additional sales that I should attribute to this defendant." [Id. at 22].   But for Counsel's arguments, Torres's BOL would have been 36 instead of 34.   After adjustments, Torres's AOL of 37 would have exposed him to at least 210 months of imprisonment - a 20% longer sentence than the 168-month sentence he actually received

20

with his attorney's assistance.   By prevailing on this issue, Counsel reduced Torres's term of imprisonment by three and a half years.

Despite Counsel's advocacy for Torres at every step of the proceedings, Torres claims Counsel was ineffective because his attorney did not advise him that pleading to the gun charge would result in a mandatory 5-year consecutive sentence. He alleges that his attorney informed him that only a 2-level enhancement may be applied. [Def. Brf. 3]. Torres's claim is devoid of any proof and cannot be squared with the record.  First, Torres offers nothing more that a bald assertion that Counsel erroneously informed him his plea would result in a possible 2-level enhancement, rather than a mandatory 5-year consecutive sentence.  Second, the plea colloquy eliminates any real possibility that incorrect advice, if given, affected the proceedings.  At the hearing, in response to inquiry to the Court, the government stated: "Finally, on Count 9, which is 18 U.S.C. 924(c), the defendant faces a mandatory consecutive term of imprisonment of five years to any sentence imposed on Count 1 and/or Count 8." [Plea Hg. 6].  Torres then told the Court, under oath, that he understood the possible consequences of his plea.  [Id.].  Accordingly, even if Counsel had incorrectly advised him the penalties he faced, as the record shows, at the time that he pleaded guilty to the gun charge, Torres was not under any misunderstanding about the mandatory and consecutive nature of

21

its penalty.

Torres's claim that his attorney failed to "dispute in any way the 4-level enhancement for a leadership role" [see Def. Brf. 3], is belied by the record.  Torres's attorney submitted a sentencing memorandum opposing a 4-level enhancement, and then made additional oral arguments at the sentencing hearing in opposition to an aggravating role adjustment.  [Sn. Hg. 5].  For instance, Counsel argued that Quinones was the leader of the drug distribution organization, because he "had regular employees which he paid on a regular basis for their distribution of drugs.  He controlled the flow of the drugs.  He controlled the price of the drugs."  [Id. at 6].  Torres, Counsel argued by contrast, "was like an independent contractor alongside of the Quinones organization," and that the co-conspirators were under Quinones's direction, not Torres's. [Id. at 7].  Since the Guidelines' 4-level enhancement was meant for a leader like Quinones, Torres's attorney argued, the most Torres's role merited was a 2-level enhancement. [Id.].  Counsel pressed the point further, after the government argued in favor of the 4-level enhancement, and in response to questions from the Court.  [Id. at 10-12].  Although Counsel's arguments on this issue did not ultimately prevail, they were reasonable and vigorous, and cannot objectively be considered constitutionally inadequate.

### 3.  Torres cannot show prejudice

Even if there was some lapse in Counsel's arguments or advice

22

- and there was not - Torres nevertheless cannot establish that he suffered Strickland prejudice as a result.

Recognizing in Strickland that attorney errors are "as likely to be utterly harmless in a particular case as they are to be prejudicial," the Court held that to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693, 694; United States v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994). In the context of a guilty plea, a defendant can show prejudice by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded and would have insisted on trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, Torres cannot make this showing. First, Torres does not claim that but for Counsel's failure to advise him of the penalty for the gun charge, he would not have pleaded guilty. Second, even if he had made such a claim, it is simply not credible and, as noted above, is squarely at odds with the record. Torres pleaded guilty shortly after the Government recited the penalties, including the consecutive term of imprisonment Torres faced on the firearms offense. Indeed, after hearing the possible penalties for the charges against him, Torres stated under oath that he understood the possible consequences of his plea. [Id. at 6]. Even

23

if Torres's attorney failed to advise him before his plea hearing of the possible penalties, Torres's show prejudice because, as the record shows, Torres chose to plead guilty after being advised of the penalties.

Moreover, the nature of the evidence suggests that Torres's claim that he would have opted for trial, is not at all "a reasonable probability." The evidence included the testimony of the UC who had extensive dealings with Torres, defendant's voice on tape discussing guns, the testimony of co-conspirator witnesses, and the indisputable forensic evidence that Torres delivered cocaine base and a firearm to a government agent. Therefore, Torres's claim that he would have gone to trial lacks any support and is not a reasonable probability.

With respect to Torres's claim that Counsel failed to dispute the 4-level enhancement, the record is clear that Counsel did indeed dispute the 4-level enhancement, [Sn. Hg. 5-7], but that, notwithstanding Counsel's zealous advocacy, the Court imposed an aggravating role adjustment. There is simply nothing to indicate that but for Counsel's performance, the Court would have found otherwise.

In the end, Torres cannot make either of the requisite Strickland showings, and his attack on the performance of Counsel is without merit.

24

**Conclusion**

Based on the foregoing, the government respectfully requests that the Court dismiss Torres's §2255 petition since it is either barred as a matter of law or the undisputed facts demonstrate that it is without merit.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By:  David Hennessy
> Assistant U.S. Attorney

DATED:    July 5, 2005.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

> Albert Johnny Torres
> Inmate No. 80198-038
> FCI Fort Dix
> P.O. Box 2000
> Fort Dix, NJ 08640

This 5th day of July 2005.

David Hennessy
ASSISTANT UNITED STATES ATTORNEY

25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.